CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 26 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| KEVIN SNODGRASS, JR., | ) | CASE NO. 7:16CV00091 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| CHRISTOPHER GILBERT, ET AL., | ) | By: Glen E. Conrad |
| | ) | Senior United States District Judge |
| Defendants. | ) | |

Kevin Snodgrass, Jr., a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, raising many claims, including due process and retaliation, related to his segregated confinement. The court granted defendants' motion for summary judgment as to all of his claims except one. See Snodgrass v. Gilbert, No. 7:16CV00091, 2017 WL 1049582 (W.D. Va. Mar. 17, 2017). The remaining claim alleges that a group of defendants conspired to delay Snodgrass' progress through the segregation step-down program in retaliation for his offering testimony in Inmate Blount's lawsuit and for pursuing his own lawsuits against prison officials. The defendants to this claim are Christopher Gilbert, Reanne Kegley, Amee Duncan, Tori Raiford, Walter Swiney, Garry Adams, E.R. Barksdale, John Hamilton, Gerald Washington, David A. Still, A. Gallihar, Henry Ponton, and Kelly M. Stewart. There being no demand for a jury trial, the court referred the matter to U.S. Magistrate Judge Pamela Meade Sargent, pursuant to 28 U.S.C. § 636(b), for appropriate proceedings.

Judge Sargent conducted a court proceeding on August 23 and 24, 2017, in which she heard testimony from the parties' witnesses and viewed their evidence. The case is presently before the court on Judge Sargent's report and recommendation ("the report"), recommending judgment for the defendants, and Snodgrass' objections thereto.

The magistrate judge makes only a recommendation to this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Although the district court may give a magistrate judge's proposed findings and recommendations "such weight as [their] merit commands and the sound discretion of the judge warrants," the authority and the responsibility to make an informed final determination remains with the district judge. United States v. Raddatz, 447 U.S. 667, 682-83 (1980) (internal quotation marks and citation omitted). Therefore, in performing a de novo review, the district judge must exercise "his non-delegable authority by considering the actual testimony, and not merely by reviewing the magistrate's report and recommendations." Wimmer v. Cook, 774 F.2d 68, 76 (4th Cir. 1985).

Snodgrass objects to the report's omission of particular testimony and documentation and its failure to interpret the evidence as proof of his asserted claims against the defendants.[1] In light of these objections, the court has specifically reviewed each item of evidence that Snodgrass has highlighted. The court also conducted de novo review of the hearing transcripts and exhibits and the report. From this review, the court concludes that the weight of the evidence fully supports the material factual findings and the legal conclusions of the report.

According to the evidence at trial, the Virginia Department of Corrections ("VDOC") adjusts an inmate's security classification using a combination of concrete criteria about an inmate's criminal and prison disciplinary records and evaluators' subjective judgments about the tendencies and thinking patterns reflected by that inmate's day-to-day behavior. This case

---

[1] Snodgrass also raises a wholesale objection that the report "does not reflect the Facts accurately and has become jumbled around. The Facts do[ ] not coincide with the submitted documents as evidence[d] by the Plaintiff and defendants." (Obj. 1, ECF No. 81). Although the court does not find that this generalized objection triggers an obligation for de novo review under § 636(b)(1), the court has, nevertheless, reviewed the hearing evidence and the report in their entirety.

2

covers a period beginning in September 2015, when Snodgrass (a Level 6 inmate at that time) was placed back in long-term segregation ("Level S") for the third time in one year.

To return to Level 6, Snodgrass then had to progress through the Segregation Reduction Step-Down Program ("step-down") program, as outlined in Operating Procedure ("OP") 830.A. See Pl.'s Ex., at 2, ECF No. 75-12. After reclassification procedures, Snodgrass was assigned to the lowest step of the program's three-step Special Management ("SM") Pathway—SM-0. The policy required him to remain infraction free for at least 90 days, complete the assigned Challenge Series workbooks, and demonstrate personal responsibility, including respect, hygiene, and cell compliance, to progress from SM-0 to SM-1; and then from SM-1 to SM-2. Snodgrass progressed to SM-1 in February 2016 and to SM-2 in September 2016. He then received an infraction for lying, returned to SM-1, and then moved back to SM-2 in March 2017.[2]

Snodgrass claimed that the defendants, working together, intentionally delayed his progress through the step-down program during 2015 and 2016 to retaliate against him for his past and present litigation efforts against prison officials. In February 2015, he filed Snodgrass v. Day, No. 7:15CV00075 (W.D. Va. May 28, 2015) (dismissed before service on defendants for failure to state a claim). In November 2015, he testified by video as a witness for Inmate Blount's civil action. In February 2016, Snodgrass filed Snodgrass v. Messer, No. 7:16CV00050 (W.D. Va. Mar. 10, 2017) (motion to dismiss granted under Fed. R. Civ. P. 12(b)(6)), aff'd, No. 17-6360 (4th Cir. 2017), cert. denied, No. 17-635 (Mar. 5, 2018). In March 2016, Snodgrass filed the action currently before the court.

---

[2] By the time of the bench trial in August 2017, Snodgrass had progressed to Level 6 and through its two phases, to make him eligible for a reduction to Level 5 and a transfer to a general population setting.

To state a colorable retaliation claim under Section 1983, a plaintiff "must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017), cert. denied, 138 S. Ct. 738 (2018). The plaintiff must plead sufficient facts to show that the allegedly retaliatory act "was taken in response to the exercise of a constitutionally protected right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

The report finds that Snodgrass presented evidence of exercising his First Amendment rights—by testifying for Inmate Blount and by filing his own lawsuits. The report also finds that Snodgrass and his witnesses presented some evidence that defendants made comments about his litigation activities that vaguely suggested some relationship between those activities and his segregation status. In addition, the report found that VDOC policies and procedures were not always followed, and reports were sometimes factually or procedurally inaccurate, requiring corrective actions after Snodgrass complained. The report states, however:

> Despite this evidence, I am not persuaded that any of the delays in Snodgrass's progression through the step-down program were caused by actions taken by the defendants in an effort to retaliate against Snodgrass for exercising his right to access the courts. To the contrary, I am persuaded that when Snodgrass has encountered a delay, the delay was based on his own actions or his own failure to progress through the program.

Report 33, ECF No. 80.

From review of the evidence, the court is similarly persuaded that officials' professional, subjective assessments of Snodgrass' overall behavior, based on more than his disciplinary infractions, slowed his advancement out of segregation. For example, he was moved from Level 6 and placed back into segregation on September 21, after officers found homemade intoxicants in his cell, and he then refused to comply with cuffing procedures for removal from the cell.

4

Snodgrass does not deny this behavior. Evaluators could rightfully consider it, among other things documented or not, in determining whether long-term segregation was an appropriate assignment for Snodgrass that fall. Several witnesses also testified that Snodgrass received poor ratings for respect over the next several months, a facet of the subjective component of the step-down procedure.

In addition, the court is persuaded from the evidence that some delays in Snodgrass' advancement were caused by other factors—such as the time needed to schedule administrative actions after his placement back in segregation in September 2015; or the unexplained administrative oversight by officials, other than the defendants, who were responsible for promptly providing Snodgrass with the workbooks or class sessions he needed. While such administrative delays were no doubt frustrating to Snodgrass, the court finds no evidence that they were motivated by any intent by the defendants or anyone else to retaliate for Snodgrass' litigation efforts.

Overall, the court finds the greater weight of the more credible evidence to be that no delays were caused by retaliatory actions or intent, or by any conspiracy to retaliate against Snodgrass for participating in or filing lawsuits. Rather, the evidence showed that inmate lawsuits are common, and officers often do not even know when they have been sued by an inmate. The defendants who testified all denied that they had ever retaliated, or would ever retaliate, against inmates for litigation activities. Adams and Gilbert denied calling Snodgrass a "snitch," as he has alleged. Defendant Duncan affirmed that she likes to see inmates progress through the step-down program to return to and stay in the general population—which is the purpose of the program. In addition, Snodgrass' placement in segregation in September 2016 predated his November 19, 2015, testimony for Inmate Blount. His two most recently filed civil

actions were not served on any defendants within the time period covered by the complaint (September 2015 through February 2016).

Based on the material factual findings in the report and the court's own de novo review of the record as reflected in this opinion, the court concludes that Snodgrass has failed to prove by a preponderance of the evidence his claim of conspiracy to retaliate against him for his litigation efforts. Accordingly, the court will overrule his objections to the report, adopt the report in its entirety, and enter judgment for the defendants on this claim.

In reviewing Snodgrass' evidence in support of his retaliation claims, however, the court also concludes that its prior order granting summary judgment for the defendants must be vacated in part, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. After that order entered, the United States Court of Appeals for the Fourth Circuit held that under clearly established law, when an inmate files a grievance under the prison's grievance procedure, he is exercising his First Amendment right to petition. Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017). As described in the court's memorandum opinion, Snodgrass has alleged that Defendants Gallihar, Gilbert, and Stewart threatened to delay his movement out of segregation if he continued to file informal complaints and grievances. Mem. Op. 9-10, ECF No. 33. In light of Booker, the court finds material disputes of fact as to whether these defendants made the alleged statements and whether they made recommendations or decisions about Snodgrass' progress in the step-down program in retaliation for his filing of grievances. Accordingly, the court will vacate the portion of the order granting summary judgment as to Snodgrass' claims that Defendants Gallihar, Gilbert, and Stewart delayed his progress through the step-down program in retaliation for his exercise of his constitutional right to petition by filing informal complaints and grievances. Given the disputed facts, the court will deny

summary judgment as to these claims and refer the matter to Judge Sargent for further proceedings, pursuant to 28 U.S.C. § 636(b)(1)(B). An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 26th day of April, 2018.

/s/ Jackson L. Kiser
Senior United States District Judge